UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TORREY L. H.[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Civil No. 3:23-cv-03737-GCS |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, through counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB").[2]

**PROCEDURAL HISTORY**

On December 29, 2020, Plaintiff filed an application for DIB alleging a disability onset date of June 1, 2020. The claim was denied on June 4, 2021, and upon reconsideration on October 1, 2021. After holding an evidentiary hearing on August 1, 2022, an Administrative Law Judge ("ALJ") denied the application on October 5, 2022.

---

[1]   Plaintiff's full name will not be used in this Memorandum & Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]   This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 10).

On September 18, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1, 24). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.[3]

### ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. The ALJ failed to properly consider the medical opinions.

2. The RFC is not supported by substantial evidence.

### APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. "The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstratable by medically acceptable clinical or laboratory diagnostic techniques. 42

---

[3] The Court notes that none of the dates provided by Plaintiff in the "Nature of Action and Prior Proceedings" are correct except for the date of the Appeals Council's decision.

U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and which is done for pay or profit. 20 C.F.R. § 404.1572.

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law

were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154 (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined Plaintiff met the insured status requirements through December 31, 2025, and Plaintiff did not engage in substantial gainful activity since his alleged onset date of June 1, 2020. The ALJ found that Plaintiff had the following severe impairments: sleep apnea, osteoarthritis, degenerative joint disease, asthma, and obesity. (Tr. 26). The ALJ considered all the Plaintiff's medically determinable impairments, including those not severe, when he assessed Plaintiff's residual functional capacity ("RFC"). (Tr. 27).

The ALJ did not doubt the existence of the problems Plaintiff described. However, the ALJ's primary concern was the severity of those problems. The ALJ found that

Plaintiff's "medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." (Tr. 27). Even so, the ALJ determined: "I have considered all of the claimant's impairments, singly and in combination, and find[] that they do not meet or medically equal any of the listings found in 20 CFR Part 404, Subpart P, Appendix 1, including listings 1.17, 1.18, and 3.03. No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (Tr. 27).

The ALJ concluded that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) but with the following exceptions: claimant can only occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. Claimant can never balance, occasionally stoop, and never kneel, crouch, or crawl. Claimant may only frequently reach overhead with either upper extremity. Claimant may not perform jobs that involve concentrated exposure to extremes of cold or heat, wetness, humidity, or fumes, odors, dust, gases, poor ventilation etc. Claimant should be allowed a regular work break approximately every 2 hours (1st break 15 minutes, 2nd break 30 minutes, 3rd break 15 minutes." (Tr. 28).

As to the medical opinions, the ALJ specifically found:

The opinions by the State agency medical consultants are only partially persuasive. They found the claimant capable of light work with lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing or walking for 6 hours in [] an 8-hour workday; sitting for 6 hours in an 8-hour

workday; frequent climbing of ramps and stairs, balancing, stooping, and crouching; occasional climbing of ladders, ropes, or scaffolds, kneeling, and crawling; frequent overhead reaching with the bilateral upper extremities; and should avoid concentrated exposure to extreme temperatures, wetness, humidity, pulmonary irritants, and hazards (1A:11-14; 5A:4-5). Their opinion is somewhat consistent with and supported by the medical evidence of record. The environmental restriction of avoiding concentrated exposure to hazards is unsupported by any diagnosis or medical findings and seems unrelated to any medically determinable impairment; therefore, it is eliminated from the residual functional capacity contained herein. The State consultants cited asthma as the only basis for the environmental restrictions but do not relate how asthma would warrant a limitation with respect to hazards, such as machinery and heights. I have further reduced the claimant to a sedentary residual functional capacity, which is more consistent with the evidence of record, the claimant's severe impairments, the claimant's testimony, and the statement of Dr. McCarthy. Furthermore, sedentary work is a subset of light work, which suggests that the State agency's opinion is partially persuasive.

Dr. McCarthy noted that "In regards to his efforts to file for disability, I do think he has a problem which keeps him from working. That problem is his severe hip arthritis. If he is not able to obtain hip replacement, then he certainly would be a candidate for disability. He cannot work on this hip. He cannot be up and functioning. If he is able to have his left hip replaced, that may change his function. However, he has barriers still to overcome in order to get his hip replaced." (16F:6). Dr. McCarthy did not assess any functional limitations; however, his statement suggests that the claimant could not return to a job that required him to be on his feet for most of the day i.e., his former occupations. His conclusion is consistent with and supported by the evidence, including imaging demonstrating severe osteoarthritis, a stable right total hip arthroplasty, and physical examinations showing limited range of motion in the hips. The claimant has a limited education and has always done manual unskilled work; therefore it is not likely that sedentary jobs were considered. Based on Dr. McCarthy's statement and the supportive medical records of the claimant, I have reduced the claimant to a sedentary residual functional capacity. As the claimant's orthopedic surgeon, he is in a better position to determine whether the claimant could work on his feet for most of the day than the State agency consultants.

In sum, the above residual functional capacity assessment is supported by the longitudinal record. Medical examinations do not demonstrate an inability to

carry out basic work activities. The record as a whole is consistent with the residual functional capacity above.

(Tr. 31).

Thus, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 31-32). However, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 33). As such, the ALJ found Plaintiff was not disabled. *Id*.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum & Order. The Court finds the ALJ's summary of the record in his decision, when compared with the points raised by Plaintiff, is sufficiently comprehensive and, therefore, there is no need to summarize it again here.

## DISCUSSION

### A.    Medical Evidence

As of March 27, 2017, ALJs are no longer mandated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (citing 20 C.F.R. § 416.920); *Mesha C. v. Kijakazi*, No. 21 C 6451, 2023 WL 2663569, at *2 (N.D. Ill. Mar. 28, 2023). Instead, ALJs will consider "supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to

support or contradict a medical opinion or prior administrative medical finding." *Bethany G. v. Kijakazi*, Case No. 20-cv-50483, 2023 WL 2683501, at *3 (N.D. Ill. Mar. 29, 2023) (citing 20 C.F.R. § 404.1520c(a), (c)). Consistency and supportability are the most important factors and courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, [but courts] do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Id.* (quoting *Ray v. Saul*, No. 20-2802, 861 Fed. Appx. 102, 105 (7th Cir. June 30, 2021) (citations omitted)); 20 C.F.R. § 404.1520c(b)(2).

Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *See* 20 C.F.R. § 404.1520c(c)(1). In other words, supportability addresses the extent to which the medical opinion is explained by the provider and supported by objective findings. Consistency assesses how a medical opinion squares with other evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(2). Simply stated, consistency addresses the extent to which a medical opinion is consistent with the record, including both medical and nonmedical sources.

Plaintiff argues that the ALJ insufficiently explained his reasons to not adopt the state agency consultants' opinions that Plaintiff was capable of light work. Plaintiff further asserts that the ALJ insufficiently explained his reason not to adopt Dr. McCarthy's opinion that Plaintiff was unable to work. Plaintiff now alleges that the ALJ

failed to discuss the consistency or supportability of the opinion. The Court disagrees with Plaintiff.

The ALJ considered the opinions of Plaintiff's orthopedic surgeon Dr. McCarthy and two state agency DDS physicians, Frank Mikell and Calixto Aquino. The ALJ noted that the state agency physicians found Plaintiff "capable of light work" and listed their relevant findings as to his ability to perform light work. (Tr. 31). As to Dr. McCarthy, the ALJ determined his conclusions were consistent and supported by the medical evidence, but he noted that Dr. McCarthy statements suggest that the conclusion that Plaintiff is unable to work is related to Plaintiff's former jobs; not to a sedentary job. Specifically, as to Dr. McCarthy's findings, the ALJ stated: "Dr. McCarthy did not assess any functional limitations; however, his statement suggests that the claimant could not return to a job that required him to be on his feet for most of the day, i.e., his former occupations. His conclusion is consistent with and supported by the evidence, . . . ." (Tr. 31). Clearly, the ALJ's opinion provides confirmation that he reviewed and considered the applicable reports by referencing the detailed narratives contained in each. In fact, the ALJ determined Plaintiff to be *more* limited than what the state agency physicians found him to be, and the ALJ restricted him to *sedentary* work. (Tr. 31). The ALJ based his determination on Plaintiff's medical evidence, Plaintiff's severe impairments, Plaintiff's testimony, and Dr. McCarthy's findings.[4] Therefore, by assessing the medical records

---

[4]   In May 2021, Dr. Adrian Feinerman performed a consultative examination on Plaintiff

and using professional opinions to make his determination, the ALJ properly supported his findings with the entire record.

## B.  Substantial Evidence

Plaintiff next contends that the RFC fails to build a logical bridge from the evidence to the conclusion that Plaintiff can perform sedentary work. The Court rejects this argument.

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008). *See also* 20 C.F.R. § 404.1545(a)(1) (noting that "residual functional capacity is the most you can still do despite your limitations."). In other words, the RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most. See Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The RFC assessment must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, FED. REG. 34474-01 (July 2, 1996).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent

---

finding that he had a cane, that ambulation was normal without an assistive device, that he could walk fifty feet, and that he had moderate difficulty standing on toes, heels, squatting, and rising. He also found that upon examination, Plaintiff was able to sit, stand, walk, hear, and speak normally. (Tr. 29; 921-923). Thereafter, Plaintiff saw Dr. McCarthy for bilateral hip pain in August 2021. An x-ray of the left hip revealed advanced degenerative changes in the left hip with flattening of the femoral head and cyst formation and complete loss of joint space. The x-ray of the right hip revealed a stable right total hip arthroplasty. (Tr. 29, 30; 936-937).

> symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "[An] ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

Here, as noted previously, the ALJ's RFC finding was more restrictive than the determinations by the non-examining physicians. *See Palmer v. Saul*, No. 19-1079, 779 Fed. Appx. 394, 398 (7th Cir. Aug. 23, 2019). *See also Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *3 (7th Cir. Dec. 21, 2021) (noting that no medical source opined that the plaintiff was more limited than the ALJ, "[s]o the ALJ committed no error in the RFC finding). In a comprehensive discussion of Plaintiff's testimony, (Tr. 28), and medical records, including findings from the consultative examiner, state agency physicians, and Plaintiff's own orthopedic, Dr. McCarthy, the ALJ explained his reasoning for the RFC finding of sedentary work. (Tr. 30-31). The ALJ addressed the reported impairments and

listed his reasoning for why the objective medical evidence supported his conclusions, which clearly surpasses the need to 'minimally articulate' his reasoning.

The ALJ bears "the 'final responsibility' for determining a claimant's residual functional capacity." *Fanta v. Saul*, No. 20-2325, 848 Fed. Appx. 655, 658 (7th Cir. Mar. 15, 2021) (quoting 20 C.F.R. § 404.1527(d)(2)). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Paul*, 955 F.3d 583, 596 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings . . . ." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Additionally, the ALJ is not required to investigate further and/or obtain medical opinions from plaintiff's medical providers. *See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018).

Plaintiff's arguments are little more than an invitation for the Court to reweigh the evidence. He has not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing the evidence. *See Burmester*, 920 F.3d at 510, *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record, the Court is convinced that the ALJ committed no errors of law, and his findings are supported by substantial evidence. Accordingly, the Court **AFFRIMS** the final decision of the Commissioner of Social Security in denying Plaintiff's application of disability benefits. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED: March 7, 2025.**

Digitally signed by Judge Sison
Date: 2025.03.07 15:19:14 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**